UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| TRAVIS ROSS,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>DR. MARY CARPENTER, in her individual<br>and official capacities,<br><br>　　　　　Defendant. | 3:15-CV-03013-RAL<br><br>ORDER DENYING DEFENDANT'S<br>MOTION TO STAY DISCOVERY AND<br>PROTECTIVE ORDER |

## I. INTRODUCTION

Plaintiff, Travis Ross ("Ross"), filed this § 1983 action against Dr. Mary Carpenter ("Dr. Carpenter") alleging that she was deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment. Doc. 1. This Court screened Ross's claim pursuant to 28 U.S.C. § 1915(e)(2)(B), determined his claim was sufficiently pleaded, and entered an Order Directing Service of Complaint. Doc. 6. Dr. Carpenter then filed a Motion to Stay Discovery and for Protective Order until the issue of qualified immunity is resolved.[1] Doc. 14. Ross opposes staying discovery. Doc. 16. For the reasons explained below, Dr. Carpenter's motion to stay discovery is denied and limited discovery is allowed.

## II. FACTS ALLEGED IN COMPLAINT[2]

---

[1] Dr. Carpenter filed a motion "asking that the doctrine of qualified immunity and Eleventh Amendment immunity be applied." Doc. 18; Doc. 19 at 1.

[2] When evaluating whether pretrial discovery should be allowed when a defendant asserts a qualified immunity defense, the Court must assume facts pleaded in Ross's Complaint to be true. Gainor v. Rogers, 973 F.2d 1379, 1387 (8th Cir. 1992) (citing Mitchell v. Forsyth, 472 U.S. 511, 528 (1985)).

Dr. Carpenter is the Director of Prison Health Care at the Mike Durfee State Prison where Ross is currently incarcerated. Doc. 1. During Ross's arrest on the charges leading to his conviction, Ross was apparently shot four times, including once in the abdomen. Doc. 1 at 1–2. His injury required various medical procedures, including "a [laparotomy] with segmental colon resection and proximal colostomy." Doc. 1 at 2. Ross claims that the doctors in Rapid City who performed these procedures "informed him that after the injury had healed, a process called [a] colostomy takedown should be performed to prevent any permanent loss of his normal rectal functions." Doc. 1 at 2.

On February 3, 2014, Ross was seen by Dr. Ryan Manson ("Dr. Manson"), a prison health care provider at Mike Durfee State Prison. Doc. 1 at 2. Ross asserts that Dr. Manson reviewed Ross's medical records and was aware that Rapid City doctors had previously informed Ross that he would need to see a gastroenterologist to be evaluated for a colostomy takedown. Doc. 1 at 2; Doc. 1-1 at 1. Considering that it had been approximately eight months since Ross's colostomy, Dr. Manson requested that Ross receive such a consultation on February 4, 2015. Doc. 1 at 2; Doc. 1-1 at 1–2. Dr. Carpenter denied Dr. Manson's request the next day deeming a colostomy takedown to be an "elective procedure." Doc. 1 at 2; Doc. 1-1 at 2. Ross contends that Dr. Carpenter never saw him before the denial was made and alleges that Dr. Carpenter was deliberately indifferent to his serious medical needs when she denied Dr. Manson's request. Doc. 1 at 1–2. Ross unsuccessfully sought informal and administrative relief. Doc. 1 at 2–3; Doc. 1-1 at 2–6.

Ross claims that the colostomy takedown is necessary to improve his quality of life and that he needs to see a specialist. Doc. 1 at 3. He maintains that he cannot regain a normal life or bodily functions without this procedure. Doc. 1 at 3. In relief, Ross requests this Court to order

2

an appointment for him to see a gastroenterologist and demands $300,000 in compensatory and punitive damages and other equity relief the courts finds appropriate. Doc. 1 at 3–4.

After this Court entered an Order Directing Service of Complaint, Doc. 6, Dr. Carpenter filed a motion to stay discovery until the issue of qualified immunity is resolved, Doc. 14. Dr. Carpenter also seeks an order from this Court protecting her from having to respond to already-served interrogatories. Doc. 14; Doc. 15 at 2; Doc. 15-1. Ross opposes staying discovery. Doc. 16.

## III. DISCUSSION

Cases from the Supreme Court of the United States stress that "[q]ualified immunity is an immunity from suit, not simply from liability," Janis v. Biesheuvel, 428 F.3d 795, 800 (8th Cir. 2005) (citing Mitchell, 472 U.S. at 526), and thus the immunity defense should be decided as early in the case as possible, see Harlow v. Fitzgerald, 457 U.S. 800, 816–19 (1982). The Supreme Court's qualified immunity decisions seek to protect officials entitled to qualified immunity not only from the burdens of trial, but also from pretrial discovery. See, e.g., id. at 817–19; Mitchell, 472 U.S. at 526. In Harlow, the Supreme Court stressed that one of the reasons for defining qualified immunity in essentially objective terms was to protect officials sued from "the burdens of broad-reaching discovery." 457 U.S. at 818. The Supreme Court stated that until the threshold issue of whether the law was clearly established is resolved, "discovery should not be allowed." Id.; see also Mitchell, 472 U.S. at 526 (providing that a defendant is entitled to dismissal under qualified immunity unless plaintiff alleges a violation of clearly established law because without such a requirement pretrial discovery "can be peculiarly disruptive of effective government" (citation omitted)). At the same time, however, Supreme Court decisions have acknowledged that there are limited situations in which pretrial discovery should be allowed on factual issues that are likely to impact the qualified immunity defense.

3

See, e.g., Mitchell, 472 U.S. at 526 ("Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.").

The Supreme Court addressed discovery prior to consideration of a qualified immunity defense in Anderson v. Creighton, 483 U.S. 635 (1985). The Court in Anderson gave lower courts a sequential analysis to follow:

> [I]t should first be determined whether the actions the [plaintiff] allege[s] [the defendant] to have taken are actions that a reasonable [official] could have believed lawful. If they are, then [the defendant] is entitled to dismissal prior to discovery. If they are not, and if the actions [the defendant] claims he took are different from those the [plaintiff] allege[s] (and are actions that a reasonable [official] could have believed lawful), then discovery may be necessary before [the defendant's] motion for summary judgment on qualified immunity grounds can be resolved.

Id. at 646 n.6 (internal citation omitted). "[T]his analysis is to be done without any attempt to verify the correctness of plaintiff's complaint." Gainor, 973 F.2d at 1387 (citing Mitchell, 472 U.S. at 528). The district court has "broad discretion" and "many options" in managing this discovery process. Crawford-El v. Britton, 523 U.S. 574, 598–601 (1998). If discovery is allowed, "any such discovery should be tailored specifically to the question of [the defendant's] qualified immunity" such as limiting discovery to what facts the defendant had in his possession at the time of the alleged constitutional violation. Anderson, 483 U.S. at 646 n.6; Gainor, 973 F.2d at 1387.

In this case, Ross's allegations, if taken as true, support a claim that a reasonable prison official would or should have known that denying Dr. Manson's request was a violation of clearly established law. Although inmates do not have a constitutional right to receive a particular treatment, the law in February of 2014 provided fair warning that it is unlawful for a

prison doctor to deny or delay medical treatment to an inmate if the prison doctor knew or should have known that such a denial or delay could create an excessive risk to the inmate's health. See, e.g., Estelle v. Gamble, 429 U.S. 97, 104–06 (1976); Pietrafeso v. Lawrence Cty., S.D., 452 F.3d 978, 983 (8th Cir. 2006) (quoting Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995)); Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (quoting Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996)). An elective procedure that is medically necessary can qualify as a serious medical need under a deliberate indifference analysis. See Roe v. Crawford, 514 F.3d 789, 798– 801 (8th Cir. 2008); see also Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989), as modified on reh'g (Oct. 27, 1989). Because there are factual questions regarding what facts Dr. Carpenter had in her possession at the time she denied Dr. Manson's request—information that perhaps only Dr. Carpenter would know—discovery is allowed prior to this Court's ruling on summary judgment. See Lovelace v. Delo, 47 F.3d 286, 287 (8th Cir. 1995) (per curiam) (finding that limited discovery was appropriate where plaintiff stated a claim of violation of clearly established law and the parties disagreed as to what actions the law enforcement officers took).

As directed by the Supreme Court, however, initial discovery should be tailored to the question of Dr. Carpenter's qualified immunity. Anderson, 483 U.S. at 646 n.6. Ross already has served twenty-five interrogatories on Dr. Carpenter. Doc. 15-1. Ross's requests are not peculiarly disruptive or burdensome to the government, nor are they overly broad. Cf. Hughbanks v. Dooley, No. Civ. 10-4064-KES, 2011 WL 3502484, at *1 (D.S.D. Aug. 10, 2011) (staying discovery subject to qualified immunity determination on summary judgment where plaintiff submitted twenty-four separate requests for production of documents, sent interrogatories to the six-named defendants, and filed numerous other motions, including six

5

motions for preliminary restraining orders); <u>Smith v. Woodward</u>, No. Civ. 10-4053-KES, 2010 WL 3937139, at *1 (D.S.D. Oct. 4, 2010) (staying discovery until qualified immunity is resolved on summary judgment because plaintiff's 296 requests "demonstrate that the Eighth Circuit's concern with the burden of discovery on public officials is well founded"). But a majority of Ross's interrogatories are irrelevant to the issue of qualified immunity.[3] <u>See</u> 15-1 at 2–3. Thus, this Court directs that Dr. Carpenter answer only those interrogatories that are relevant to qualified immunity.

**III. CONCLUSION**

Therefore, it is hereby

ORDERED that Dr. Carpenter's Motion to Stay Discovery and for Protective Order, Doc. 14, is denied. It is further

ORDERED that Dr. Carpenter answer Plaintiff's Interrogatories (First Set) dated October 19, 2015, Doc. 15-1, numbers one through seven (1-7) and eleven through twenty-one (11-21) within twenty-eight (28) days of the date of this Court's order. It is finally

ORDERED that Ross has until twenty-one (21) days after receipt of the discovery responses to file his response brief.

DATED this 26th day of January, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

---

[3]For example, Ross asked Dr. Carpenter whether the State of South Dakota is a "territory" of the United States and "[h]ow much clearer" does his claim need to be to state a claim. Doc. 15-1 at 2–3.

6