UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| TRAVIS ROSS, | 3:15-CV-03013-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| DR. MARY CARPENTER, in her individual and official capacities, | |
| Defendant. | |

Plaintiff, Travis Ross ("Ross"), filed this § 1983 action against Dr. Mary Carpenter ("Dr. Carpenter"), alleging that she was deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment. Doc. 1. This Court screened Ross's claim pursuant to 28 U.S.C. § 1915(e)(2)(B), determined his claim was sufficiently pleaded, and entered an Order Directing Service of Complaint. Doc. 6. Dr. Carpenter then filed a Motion for Summary Judgment. Doc. 18. For the reasons explained below, Dr. Carpenter's motion for summary judgment is granted.

## I. PRELIMINARY ISSUES

In a previous Opinion and Order from this Court which denied Dr. Carpenter's motion to stay discovery and protective order, this Court ordered Ross to file his response brief to Dr. Carpenter's motion for summary judgment "twenty-one (21) days after receipt" of certain discovery responses from Dr. Carpenter. Doc. 23 at 6. Subsequent to that Opinion and Order, Dr. Carpenter's counsel filed a Certificate of Service with the Court confirming that discovery responses were mailed to Ross at the Mike Durfee State Prison on February 11, 2016. Doc. 24.

1

Ross has not filed a response brief, and his time to do so has expired. See Doc. 24; Doc. 23 at 6; see also D.S.D. Civ. LR 7.1(B).

Dr. Carpenter complied with Local Rule 56.1(A) of the Civil Local Rules of Practice of the United States District Court for the District of South Dakota by filing a statement of material facts along with her motion for summary judgment. Doc. 20. Local Rule 56.1(B) requires the party opposing a motion for summary judgment, to "respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record." D.S.D. Civ. LR 56.1(B). All material facts set forth by the moving party are deemed admitted "unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. LR 56.1(D). Ross did not file a response under Local Rule 56.1(B). Nevertheless, to ensure that the facts are viewed in the light most favorable to Ross as a pro se litigant and as the non-moving party, this Court draws the facts not only from Dr. Carpenter's statement of undisputed material facts, but also from Ross's verified complaint and the exhibits attached thereto. See Nickens v. White, 622 F.2d 967, 971 (8th Cir. 1980); Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 ("[T]he facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion."); see also McClanahan v. Young, 4:13-CV-04140-RAL, 2016 WL 520983, at *1 (D.S.D. Feb. 5, 2016). Those portions of Dr. Carpenter's statement of material facts that do not conflict with Ross's filings, however, are deemed admitted. D.S.D. Civ. LR 56.1(D).

## II.   FACTS

Dr. Carpenter is the Medical Director for Correctional Health for the State of South Dakota Department for Health, and Ross is in the custody of the South Dakota Department of Corrections, currently housed at the Mike Durfee State Prison. Doc. 20 at ¶ 1; Doc. 20-1 at ¶ 1. During Ross's arrest on the charges leading to his conviction, Ross was shot multiple times,

including once in the abdomen.  Doc. 1 at 1–2; Doc. 20 at ¶ 2.  One of the various medical procedures Ross underwent as a result of those injuries was the placement of a colostomy on June 17, 2013.  Doc. 1 at 2; Doc. 20 at ¶ 3; Doc. 20-4 at 1–4.  Ross claims that the doctors in Rapid City who performed these procedures "informed him that after the injury had healed, a process called [a] colostomy takedown should be performed to prevent any permanent loss of his normal rectal functions."  Doc. 1 at 2.

Upon request from Ryan Manson ("Manson"), a Certified Nurse Practitioner at the South Dakota State Penitentiary, and with approval from Dr. Carpenter, Ross was seen by Dr. Steven L. Condron ("Dr. Condron") with Avera Gastroenterology at Avera Medical Group in Sioux Falls, South Dakota on August 14, 2013, regarding the healing gunshot wound to his abdomen and his colostomy.  Doc. 20-3; Doc. 20-4 at 1–3.  Dr. Condron noted that Ross was "doing reasonably well from a bowel standpoint," and had no obstructive symptoms, no blood in his ostomy, no pain or discomfort, and no nausea or vomiting.  Doc. 20-4 at 1–2.  Dr. Condron also reported that Ross had no specific gastrointestinal ("GI") complaints.  Doc. 20-4 at 2.  Dr. Condron then made the following impression notes:

> I would recommend no further intervention from a GI standpoint.  Further consideration could be given to colostomy takedown.  I see no reason to refer him for that at this point.  He is a higher risk patient for a low-risk procedure and he is doing quite well from a GI standpoint.  I would recommend supportive care and follow up with surgery if any obstructive symptoms develop.

Doc. 20-4 at 2.

On August 16, 2013, Ross met with Manson at the South Dakota State Penitentiary.  Doc. 20-4 at 4–5.  Manson confirmed Ross's self-report that Ross's colostomy was having good output.  Doc. 20-4 at 4–5.  Manson noted that no new orders were given as a result of Ross's recent Avera appointment with Dr. Condron and that Ross mentioned discussions were had about a possible colostomy reduction in six months.  Doc. 20-4 at 4.  Manson reviewed the Avera

3

dictation and noted that although Ross could be a candidate for a colostomy reduction in the future, Avera Gastroenterology "stated no reason to refer him for that at this point."[1]  Doc. 20-4 at 6.

Manson also saw Ross on September 19 and October 11, 2013.  Doc. 20-4 at 8–10.  Both records indicate that Manson confirmed Ross's self-report of good colostomy output.  Doc. 20-4 at 8–10.

On February 3, 2014, Ross was seen by Manson to discuss his colostomy.  Doc. 20-4 at 11.  Ross requested to be considered for a colostomy takedown that was previously discussed with him back in August of 2013.  Doc. 20-4 at 11.  He reported that he had not experienced any specific problems with his colostomy and that it had been functioning well.  Doc. 20-4 at 11.  Considering that it had been approximately eight months since Ross was given the colostomy and that Avera Gastroenterology records did suggest that Ross would be evaluated in the future for such a procedure, Manson filled out an Authorization Request Form, requesting that Ross be referred for evaluation to potentially do a colostomy takedown.  Doc. 1 at 2; Doc. 20-2; Doc. 20-4 at 11.

The next day, Dr. Carpenter received the Authorization Request Form and Manson's notes from Ross's examination on February 3, 2014.  Doc. 20-1 at ¶ 6.  Dr. Carpenter denied the request on February 5, 2014, deeming a colostomy takedown to be an "elective procedure."  Doc. 1 at 2; Doc. 20-2.  Dr. Carpenter attested that based on Ross's medical records, there was no indication that a colostomy takedown was necessary and there is no timeframe within which a colostomy must be reversed.  Doc. 20-1 at ¶¶ 12–13.  Dr. Carpenter further attested that Ross

---

[1] There are two versions of Manson's follow-up notes with Ross on August 16, 2013.  See Doc. 20-4 at 4–7.  The second set of notes, Doc. 20-4 at 6–7, appear to be an updated version of the first set, Doc. 20-4 at 4–5, with alterations appearing in regards to Ross's recent blood clotting issues as well as Manson's review of the Avera Gastroenterology notes once they were received.  Compare Doc. 20-4 at 4–5, with Doc. 20-4 at 6–7.

4

will not suffer permanent loss of normal rectal functions due to his colostomy. Doc. 20-1 at ¶ 13. Ross unsuccessfully sought informal and administrative relief from Dr. Carpenter's denial of the Authorization Request Form, and his requests to see a doctor, rather than Manson, were similarly denied. Doc. 1 at 2–3; Doc. 1-1 at 2–6.

Thereafter, Ross was seen by Manson on November 14, 2014 and by Certified Physician Assistant Michael Joe Hanvey ("PA Hanvey") on February 13, 2015. Doc. 20-4 at 13–15. Manson and PA Hanvey both noted that Ross reported that his colostomy had been functioning well and without problems. Doc. 20-4 at 13–15. PA Hanvey also documented that Ross was not experiencing any abdominal pain or problems with nausea, vomiting, or diarrhea. Doc. 20-4.

According to Ross's verified complaint, which was filed on August 3, 2015, a colostomy takedown is necessary because he is "suffering from the loss [of] his rectal function at this time." Doc. 1 at 3. Ross attests that he cannot regain a normal life or bodily functions without this procedure and that his colostomy is "gross" and has an "odor." Doc. 1 at 3. According to Ross, the Rapid City doctors who gave him the colostomy in June of 2013 advised him that a colostomy takedown should be done to prevent the permanent loss of Ross's normal rectal functions.[2] Doc. 1 at 2. Ross also attested that he needs to see a gastroenterologist because "the permanent loss of [his] rectal function is unknown, until he is allowed to be seen by a [gastroenterologist]." Doc. 1 at 3. In relief, Ross requests this Court to order an appointment for him to see a gastroenterologist and that the gastroenterologist's orders be followed, and Ross demands $300,000 in compensatory and punitive damages and other equity relief the courts finds appropriate. Doc. 1 at 3–4.

---

[2] Ross did not supplement his verified complaint with any records from Rapid City doctors, nor did Dr. Carpenter's supplemental materials accompanying her motion for summary judgment contain any Rapid City notations. Docs. 1, 1-1, 20-4.

On the morning of September 23, 2015, Dr. Carpenter examined Ross.[3] Doc. 20-4 at 16–

17; Doc. 20-1 at ¶ 11. Records indicate that Ross had no history of "constipation, diarrhea,

indigestion, nausea, vomiting, or rectal bleeding." Doc. 20-4 at 16. Ross was told that a

colostomy takedown is an elective procedure and that Dr. Carpenter "would need medical

indication to perform." Doc. 20-4 at 17. Dr. Carpenter noted that Ross will be monitored at

yearly intervals, unless problems are reported. Doc. 20-4 at 17.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 places the burden

initially on the moving party to clearly establish the absence of a genuine issue of material fact

and entitlement to judgment as a matter of law. Id.; see also Celotex Corp. v. Catrett, 477 U.S.

317, 322–23 (1986). Once the moving party has met that burden, the nonmoving party must

establish that a material fact is genuinely disputed either by "citing to particular parts of

materials in the record" or by "showing that the materials cited do not establish the absence or

presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B); see also Hearst v. Progressive

Foam Techs., Inc., 641 F.3d 276, 281–82 & n.4 (8th Cir. 2011). The nonmoving party "may not

rely on allegations or denials, but must demonstrate the existence of specific facts that create a

genuine issue for trial." Macklin v. FMC Transp., Inc., 815 F.3d 425, 427 (8th Cir. 2016)

(quoting Mann v. Yarnell, 497 F.3d 822, 825 (8th Cir. 2007)). Rule 56 "mandates the entry of

---

[3] Dr. Carpenter attests that she "did not know at that time that Inmate Ross had commenced this action . . . [and that it was her] understanding that the complaint and summons were served later that day in Pierre, South Dakota, at the South Dakota Department of Health." Doc. 20-1 at ¶ 11. Kayla Tinker, Administrator of Correctional Health Services and who "is Dr. Carpenter's [s]upervisor," was served with a summons in this case at 3:00 p.m. on September 23, 2015. Doc. 10.

6

summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) (per curiam) (quoting Celotex Corp., 477 U.S. at 322). However, on summary judgment, courts view the evidence and reasonable inferences in the light most favorable to the nonmoving party. Robbins v. Becker, 794 F.3d 988, 992 (8th Cir. 2015). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting Celotex Corp., 477 U.S. at 327).

While pro se litigants are entitled to a liberal construction of their pleadings, Rule 56 of the Federal Rules of Civil Procedure remains applicable to them. Quam v. Minnehaha Cty. Jail, 821 F.2d 522, 522 (8th Cir. 1987) (per curiam); see also Beck v. Skon, 253 F.3d 330, 332–33 (8th Cir. 2001) (finding that pro se litigants are not excused from following the Federal Rules of Civil Procedure, including the burden a responding party must meet under the summary judgment standard). "The district court is not required to 'plumb the record in order to find a genuine issue of material fact.'" Litschewski v. Dooley, No. CIV. 11-4105-RAL, 2012 WL 3023249, at *5 (D.S.D. July 24, 2012) (quoting Barge v. Anheuser–Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996)). Additionally, "the court is not 'required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" Johnson v. Madsen, No. 4:14-CV-04005-KES, 2015 WL 630977, at *3 (D.S.D. Feb. 12, 2015) (quoting Barge, 87 F.3d at 260). However, district courts are to remain "sensitive to the special issues

7

faced by prisoners attempting to proceed pro se in vindicating their constitutional rights," and the Eighth Circuit has explicitly disapproved of summary dismissal of prisoner "pro se claims without regard for these special problems." Nickens, 622 F.2d at 971.

## IV. DISCUSSION

Under § 1983, state officials may be sued in their individual capacities, their official capacities, or both. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). Here, Ross has sued Dr. Carpenter in both her official and individual capacities. Doc. 1. As explained more fully below, individual and official capacity suits differ in both their pleading requirements and the defenses available to the official. See Hafer v. Melo, 502 U.S. 21, 25 (1991). Because of these differences, this Court will analyze Ross's individual capacity and official capacity claims separately.

### A. Individual Capacity Claim

The doctrine of qualified immunity is a defense available to state officials sued in their individual capacities under § 1983. Dr. Carpenter maintains that Ross's individual capacity suit is barred under this doctrine. Doc. 19 at 2. "On summary judgment, a defendant official is entitled to qualified immunity unless '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014) (quoting Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009)). If a § 1983 plaintiff fails to establish either prong—and the court may consider one without the other—qualified immunity shields the officials from suit. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). But a district court "may not deny qualified immunity without answering both questions in the plaintiff's favor." Walton, 752 F.3d at 1116; see also Pearson, 555 U.S. at 236.

8

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs." Laganiere v. Cty. of Olmsted, 772 F.3d 1114, 1116-17 (8th Cir. 2014). A plaintiff who claims that a defendant was deliberately indifferent to his medical needs must show that he suffered "an objectively serious medical need, and that the 'defendant actually knew of, but deliberately disregarded, such need.'" Id. (quoting McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009); see also Farmer v. Brennan, 511 U.S. 825, 811, 837 (1994) (holding "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minn. Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008) (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). "[A]ctual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious." Jones, 512 F.3d at 481–82 (citing Farmer, 511 U.S. at 842). "It is sufficient to show that 'the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it.'" Letterman v. Does, 789 F.3d 856, 862 (8th Cir. 2015) (quoting Farmer, 511 U.S. at 842). If knowledge is shown, the plaintiff must then show the defendants "'knew that their conduct was inappropriate in light of' the risk to the prisoner." Id. (quoting Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009)).

"Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." Pietrafeso v. Lawrence Cty., S.D., 452 F.3d 978, 983 (8th Cir. 2006) (quoting Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995)). However, deliberate indifference demands that a plaintiff

9

show more than negligence and gross negligence, "and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010) (quoting Alberson v. Norris, 458 F.3d 762, 765 (8th Cir.2006)). Rather, a plaintiff must how that the defendant's mental state was "akin to criminal recklessness." McCaster v. Clausen, 684 F.3d 740, 746 (8th Cir. 2012) (quotation omitted). When evaluating whether a defendant deliberately disregarded a risk, the court considers the "actions in light of the information [the defendant] possessed at the time, the practical limitations of [the defendant's] position and alternative courses of action that would have been apparent to an official in that position." Letterman, 789 F.3d at 862 (quoting Gregoire v. Class, 236 F.3d 413, 419 (8th Cir. 2000)).

Dr. Carpenter contends that although Ross has a constitutional right to adequate medical care, Ross did not have a right to an evaluation that was not medically necessary on February 5, 2014. Doc. 19 at 4. Dr. Carpenter also argues that her denial of an evaluation for Ross regarding a potential colostomy takedown does not rise to the level of deliberate indifference because there were "no medical indications that [Ross's] health necessitate[d] a colostomy takedown." Doc. 19 at 4. Instead, Dr. Carpenter asserts Ross was not suffering any pain or discomfort from his colostomy and was receiving the necessary care and supplies so his colostomy would function well. Doc. 19 at 4. According to Dr. Carpenter, Ross will not "lose functioning of his rectum if the colostomy takedown is not performed within a certain timeframe" and because Ross is considered a "high risk" patient for that procedure, he could "face a greater risk of complications should a colostomy takedown be performed." Doc. 19 at 5.

Ross does not allege that he suffered from the loss of rectal function at any time leading up to Dr. Carpenter's denial in February of 2014, Doc. 1 at 3, nor do the appointment notes from

Dr. Condron on August 14, 2013 or Manson on August 16, 2013 and February 3, 2014 contain any concerns regarding Ross's colostomy. In fact, both Dr. Condron and Manson confirmed that Ross's colostomy was doing well and had good output. Doc. 20-4 at 1–2, 4–5, 11. Ross claims that the Rapid City doctors who gave him the colostomy in June of 2013 advised him that a colostomy takedown should be done to prevent the permanent loss of Ross's normal rectal functions, but Ross has not presented this Court with any evidence that reflects the Rapid City doctor's opinion regarding a colostomy takedown or that Dr. Carpenter was aware of or reviewed any of the Rapid City medical records when the colostomy takedown evaluation was denied as an "elective procedure."[4] Absent such knowledge, Dr. Carpenter did not act with deliberate indifference in denying Manson's Authorization Request Form. See Letterman, 789 F.3d at 862 (quoting Gregoire, 236 F.3d at 419); see also Krout, 583 F.3d at 569 (finding defendants were not deliberately indifferent to plaintiff's medical needs where defendants frequently checked on plaintiff, no medical emergency existed, and a trained medical technician reported nothing abnormal about plaintiff's medical condition); Popoalii v. Corr. Med. Servs., 512 F.3d 488, 500 (8th Cir. 2008) (finding defendants were not deliberately indifferent to plaintiff's medical needs, even when defendants should have been more vigilant in obtaining plaintiff's medical records to inform themselves of the plaintiff's diagnosis, because plaintiff had none of the normal signs or risks associated with the medical diagnosis).

---

[4] This Court previously denied Dr. Carpenter's Motion to Stay Discovery and for Protective Order, Doc. 14, ordered Dr. Carpenter to answer certain parts of the first set of Ross's interrogatories, Doc. 15-1, and allowed Ross additionally time to file his response brief to Dr. Carpenter's motion for summary judgment, Doc. 23 at 6. This Court reasoned that Dr. Carpenter was ordered to respond to certain interrogatories because factual questions remained regarding "what facts Dr. Carpenter had in her possession at the time she denied [] Manson's request." Doc. 23 at 5. In compliance with this Court's order, Dr. Carpenter responded to the noted interrogatories. Doc. 24. Ross did not file a responsive brief or respond to Dr. Carpenter's statement of undisputed material facts, despite being provided the additional discovery information and having additional time in which to respond. Doc. 24.

Additionally, Ross has not provided evidence that the colostomy takedown is medically necessary. The Eighth Circuit has stated that procedures that are medically necessary may qualify as a serious medical need under a deliberate indifference analysis. See Roe v. Crawford, 514 F.3d 789, 798 (8th Cir. 2008). Dr. Carpenter attested that there is no timeframe within which a colostomy must be reversed and that Ross will not suffer permanent loss of normal rectal functions due to his colostomy. Doc. 20-1 at ¶¶ 12–13. Ross has not pointed to any evidence in the record that would dispute Dr. Carpenter's opinion, but rather he acknowledged that "[t]he permanent loss of [his] rectal function is unknown, until he is allowed to be seen by [a gastroenterologist]." Doc. 1 at 3. Without a sufficient showing that a colostomy takedown is medically necessary, Dr. Carpenter's denial of the procedure as elective and Ross's belief that the procedure may be necessary appears to present only a "mere disagreement with treatment decisions [which] does not rise to the level of a constitutional violation.'" Langford, 614 F.3d at 460 (quoting Alberson, 458 F.3d at 765). Furthermore, Ross's belief that he cannot regain a "somewhat normal life style[] and bodily function" because the colostomy is "gross" and has an "odor" does not establish medical necessity under a serious medical need analysis. See Roe, 514 F.3d at 799 (approving of language from another district court opinion which stated that a medically necessary abortion may be qualified as a serious medical need, but "inconvenience and financial drain of an unwanted pregnancy are simply insufficient in terms of the type of egregious treatment that the Eighth Amendment proscribes" (quoting Victoria W. v. Larpenter, 205 F. Supp. 580, 601 (E.D. La. 2002))).

## B. Official Capacity Claim

Ross's remaining claim is against Dr. Carpenter in her official capacity. Doc. 1. First, absent consent by the state or congressional abrogation of immunity, "the Eleventh Amendment

12

prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially 'for the recovery of money from the state.'" Treleven v. Univ. of Minn., 73 F.3d 816, 818 (8th Cir. 1996) (footnote omitted) (quoting Ford Motor Co. v. Dep't of the Treasury, 323 U.S. 459, 464 (1945)). South Dakota has not consented to this suit or to official capacity suits under § 1983 for money damages, § 1983 has not abrogated South Dakota's Eleventh Amendment immunity, and Dr. Carpenter has raised Eleventh Amendment immunity as a defense in this case. Doc. 13 at ¶¶ 11, 16. Thus, the Eleventh Amendment prevents this Court from having jurisdiction over Ross's claims for money damages against Dr. Carpenter in her official capacity. Glasgow v. Nebraska, No. 15-1755, 2016 WL 1391775, at *2 (8th Cir. Apr. 8, 2016) (recognizing that absent a waiver of sovereign immunity, compensatory claims against state officials in their official capacities are prohibited by the Eleventh Amendment); Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989) ("The Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees."). Second, the Supreme Court of the United States has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" and that an action against a state official in his or her official capacity is the same as a suit against the State itself. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore, official capacity suits are barred unless the plaintiff is seeking prospective relief. Id. at 71 & n.10 (noting its holding did not disturb the well-established rule of Ex Parte Young, 209 U.S. 123, 157 (1908)); see also Campbell v. Ark. Dep't of Corr., 155 F3d. 950, 962 (8th Cir. 1998).

In relief, Ross requests that the Court order the South Dakota Department of Health to schedule a gastroenterologist appointment for him and that any recommendations from that appointment be followed. Doc. 1 at 3. Such relief is not barred in § 1983 official capacity suits.

Bennie v. Munn, No. 14-3473, 2016 WL 2731577, at \*3 (8th Cir. May 11, 2016) (stating that "a declaratory judgment . . . is the sort of prospective relief that can be sought in federal court from state officials sued in their official capacities, notwithstanding the state's sovereign immunity, under Ex Parte Young"); see also Milliken v. Bradley, 433 U.S. 267, 289 (1977) (reaffirming that Ex parte Young "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury"); Edelman v. Jordan, 415 U.S. 651, 667–68 (1974); Mo. Child Care Ass'n v. Cross, 294 F.3d 1034, 1042 (8th Cir. 2002). As the plaintiff in this case, however, Ross bears the burden of establishing that he has standing under Article III of the Constitution to request such prospective relief. Smook v. Minnehaha Cty., 457 F.3d 806, 815 (8th Cir. 2006) (analyzing first the case or controversy requirement under Article III to determine whether jurisdiction exists in action for injunctive relief); Park v. Forest Serv. of U.S., 205 F.3d 1034, 1036 (8th Cir. 2000) ("Standing is . . . a threshold issues in every case before a federal court[.]").

To demonstrate standing, Ross must establish an injury in fact, a causal connection between the injury and the alleged conduct of Dr. Carpenter, and a likelihood that the remedy he seeks will redress the alleged injury. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102–03 (1998); Boyle v. Anderson, 68 F.3d 1093, 1100 (8th Cir. 1995). When a plaintiff requests prospective relief, the injury in fact element "requires a showing that the plaintiff faces a threat of ongoing or future harm." Park, 205 F.3d at 1037. Evidence that a plaintiff suffered an injury in the past does not alone establish that the plaintiff has standing to seek prospective relief. See O'Shea v. Littelton, 414 U.S. 488, 495–96 (1974) (holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects"); Mosby v. Ligon, 418 F.3d 927,

14

933–34 (8th Cir. 2005) (same). A plaintiff's speculation that he may suffer injury in the future is likewise insufficient. City of L.A. v. Lyons, 461 U.S. 95, 102 (1983) (explaining that a "conjectural" or "hypothetical" threat of injury does not establish standing). Instead, as the Supreme Court made clear in City of Los Angeles v. Lyons, the plaintiff must show that "the injury or threat of injury" is "'real and immediate'" to have standing to seek injunctive relief. Id.; see also Babbit v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (stating that no case or controversy exists when the alleged unconstitutional acts are "hypothetical or abstract;" rather the plaintiff must show that there is a "realistic danger of sustaining a direct injury" as a result of the unconstitutional acts or that the alleged unconstitutional acts are "certainly impending" (internal quotation marks and quotation omitted)).

Ross has failed to demonstrate that there is a sufficient likelihood that he will suffer harm if he does not receive an evaluation for a colostomy takedown. First, Ross has not offered any evidence that Dr. Carpenter has an ongoing policy of denying colostomy takedowns in a manner that violates the Eighth Amendment or that other inmates have been denied similar procedures. See Miller v. City of St. Paul, No. 15-2885, 2016 WL 2956753, at *3 (8th Cir. May 23, 2016). Nor has Ross established a material issue of fact concerning whether Dr. Carpenter violated his Eighth Amendment rights when she denied the colostomy takedown as an elective procedure. Further, Ross has failed to establish that he faces a real and immediate future threat of harm in a manner that violates his rights under the Eighth Amendment. Ross claims that Rapid City doctors informed him that after his injury had healed that a colostomy takedown "should be performed to prevent any permanent loss of his normal rectal function," Doc. 1 at 2, but Ross also acknowledged that "the permanent loss of [his] rectal function is unknown, until he is allowed to be seen by a [gastroenterologist]," Doc. 1 at 3. The "unknown" nature of the alleged

harm is too speculative to maintain standing. See Lyons, 461 U.S. at 102; Smook, 457 F.3d at
816 (stating that "[e]ven if the face of the complaint did include a general assertion of future
injury . . . attempting to anticipate whether any of the plaintiffs would actually [suffer the alleged
harm] would take [the Court] 'into the area of 'speculation and conjecture'" (quoting O'Shea,
414 U.S. at 497)); Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (finding that an alleged
constitutional violation that "can . . . [happen] at any time" was "too speculative a basis for
declaratory relief"). Indeed, the last gastroenterologist who saw Ross opined that there was no
reason to refer Ross for a colostomy takedown in August of 2013 and he was a higher risk
patient for that procedure and was otherwise doing well. Similarly, the fact that Ross had been
denied a colostomy takedown evaluation in the past does not establish that he will be denied a
colostomy takedown evaluation in the future, particularly if his condition changes. O'Shea, 414
U.S. at 495–96. Ross has not proved that he is facing a realistic threat of sustaining harm or that
the harm is certainly impending. See Babbit, 442 U.S. at 298; Miller, 2016 WL 2956753, at *3.
Thus, he has no standing to request prospective relief.

## V.    CONCLUSION

Therefore, it is hereby

ORDERED that Defendant's Motion for Summary Judgment, Doc. 18, is granted.

DATED this 8th day of June, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

16